PeaesoN, J.
Every one who reads the testament submit *369 ted to ns for construction will, at the first blush, be struck with its singularity in this: it has but one clause; no executor is appointed; it disposes of but one class of the testator’s property, to wit, that which he acquired jure mariti, and there is an intention to die intestate as to the other class, to wit, that which he acquired by his own exertions. These circumstances force upon the mind the conviction that it was the testator’s intention to give back to his wife all that begot by her. Whether this was in pursuance of an ante-nuptial agreement, or because of the wife’s importunity, or because of a sudden freak of temper, excited by a “ falling out” or quarrel of the parties, it is unnecessary to enquire. No matter what may have caused it, the fact is apparent on the face of the paper.
So the case falls within the principle established by Jessup v. Jessup, Busb. Eq. 180; Cromartie v. Robinson, 2 Jones’ Eq. 219, and many others.
It is clear that the issue or increase of the slaves acquired from the estate of William Kennedjr, pass under the general words, without reference to the time of their birth.
It is equally clear that the issue or increase of the slaves which the testator, at the writing of his will, had rednced into possession jwe mariti, also pass under the general words, without reference to the time of their birth, unless the enumeration has the effect of restricting the meaning of these words.
When two modes of description are used, and there is a discrepancy, that is to be followed, in respect to which there is the least liability to mistake. This rule is well settled. Carter v. Lowe, 2 Jones’ Eq. 379, among others, furnishes a striking instance; the testator had loaned to his son 1nhom-ton several slaves, to wit, “Lucy” and others; he had also loaned to liis son Archer several slaves, to wit, “ Sylvia” and others ; by his will he gives to Thornton the following slaves, to wit, Sylvia and others, naming them, being the negroes 1 loaxied him some years since ; and he gave to Archer tire following slaves, to wit, “ Lucy, &c.,” (naming them) being the *370 negroes 1 loaned him some years since. This enumeration exactly reversed the tiling, so there was a discrepancy between the mode of description by the enumeration, and the other mode by reference to the prior loans, and it was held that the latter description was to be followed, because in respect to it there could'be no mistake; whereas, he might have forgotten which family of negroes he had given to the one, and which to the other, and so made a mistake in attempting to name them ; “ but lie could not have forgotten the fact of the previous gifts.”
Apply the principle to our case; there can be no mistake in the description, “ all the negroes of every description that I received through or by her, i. e., that I acquired jure mariti y ” but the attempt at enumeration is liable to mistake. Suppose it had omitted one of the old negroes, surely that negro would, nevertheless, pass under the general description. So, if it had omitted a child loom before the writing of the will, (which is admitted to be the fact in regard to one of them,) certainly that child will pass. The same principle applies to a child born after the writing of the will, for it falls under the general words, and is included in the class intended to be given ; in fact, it was impossible to include that in the particular description, which accounts for the “ &c.” at the end of the enumeration, whereby it is left open to take in others of the same class that were not named.
This conclusion is confirmed by the further fact, that in regard to the negroes of the estate of "William Kennedy, the children born between the writing of the will and the death of the testator, pass under the bequest; and no reason can be suggested why he intended to make it otherwise as to the negroes that he had before reduced into possession, especially in face of the fact, that he adhei’es so strictly to his intention to give to his wife all that he had acquired jure mariti, as to direct the price of one of the class that he had sold, to be paid to her in cash.
We think it is clear that Mrs. Allen is entitled to the hires of the slaves from the date of the death of her husband, and *371 on the same principle she is entitled to interest upon $312, directed to be paid in cash/ the principal standing for the negro he had sold and the interest for his hire.
Per Curtam, There will be a decree declaring the rights of the defendant, Mrs. Allen, according to this opinion.